UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| M. WILLIAM MACEY, JR., et al., | : |
| Plaintiffs, | : |
| v. | : 3:06CV1719 (MRK) |
| CAROLINA CASUALTY INSURANCE COMPANY, | : |
| Defendant. | : |

# MEMORANDUM OF DECISION

Plaintiffs William Macey, Charles Santoro, and Harriet Weiss Terbell have sued the Carolina Casualty Insurance Company ("Carolina") for failing to provide coverage under a directors and officers liability policy issued by Carolina. Plaintiffs and Carolina have both filed cross-motions for summary judgment.[1] For the reasons that follow, the Court DENIES Plaintiffs' Motion for Summary Judgment [doc. # 97] and GRANTS Carolina's Motion for Summary Judgment [doc. # 98].[2]

---

[1] Currently before the Court are the Parties' renewed motions for summary judgment. The Court previously denied the Parties motions for summary judgment without prejudice to renewal and without reaching the merits. *See* Order [doc. # 96].

[2] Originally, the Parties had also filed several motions to strike. *See* Def.'s Mot. to Strike Parts of Judd Bernstein's Aff. [doc. # 70]; Def.'s Mot. to Strike Parts of William Macey's Aff. [doc. # 71]; Pls.' Mot. to Strike Parts of Timothy Marks's Aff. [doc. # 84]. They did not separately renew these motions in conjunction with their renewed motions for summary judgment, although they did incorporate all of their papers by reference. The Court does not need to consider these motions because it finds them without merit and, in any event, the Court did not rely on any of the portions of the affidavits that are under dispute. Therefore, had the Parties renewed their motions to strike, the Court would have denied them.

**I.**

The relevant facts are as follows. In May 2004, a company called Community Research Associates ("CRA") undertook a major reorganization of its operations, which involved changing its state of incorporation from Illinois to Delaware and effectuating a share purchase agreement with Sterling Investment Partners ("Sterling"), which then became the majority shareholder of the newly incorporated CRA-Delaware. During the course of this reorganization, the former majority shareholders and directors and officers of CRA-Illinois – including James Brown, Doyle Wood, and Allen Cole – briefly assumed the position of officers and/or directors of CRA-Delaware in order to effectuate the reorganization plan. Messrs. Brown and Wood, who were appointed to the Board of Directors, resigned upon completion of the reorganization. Messrs. Wood and Cole, who were respectively appointed President and Treasurer of CRA-Delaware, remained in their positions (at least nominally) until January 2005. After the reorganization, Messrs. Brown, Wood, and Cole – whom the parties refer to as the "Legacy Shareholders" – became minority shareholders in CRA-Delaware. Plaintiffs Macey, Santoro, and Terbell were all appointed to the Board of Directors of CRA-Delaware either at or shortly after the reorganization. Messrs. Macey and Santoro – but not Ms. Terbell – were also managing directors of Sterling, which took management control of CRA-Delaware after the reorganization.

In October 2004, CRA-Delaware purchased directors and officers liability insurance from Carolina. The insurance policy covered claims made against CRA-Delaware or any of its directors or officers for "any Wrongful Act," including breach of fiduciary duty, subject to certain exclusions. One of the exclusions is often referred to as an "insured vs. insured" exclusion. The policy states that "[t]he Insurer shall not be liable to make any payment for Loss in connection with a Claim made

-2-

against any Insured . . . by, on behalf, or in the right of the Insured Entity, or by any Directors or Officers . . . ." Aff. of William Macey Re: Mot. for Summ. J. [doc. # 62], Ex. B at § IV.F. The term "Directors or Officers" is defined elsewhere in the policy as "any past, present or future duly elected or appointed directors or officers on the Insured Entity." *Id*. at III.D. The Insured Entity under the policy was CRA-Delaware. The policy covered claims made during the time period between October 10, 2004 and October 10, 2005.

In August 2005, Plaintiffs approved a merger by means of which all of CRA-Delaware's stock was sold to a third party, CRA Acquisitions Corp. After the merger, neither Plaintiffs nor the Legacy Shareholders had any ownership interest or management role in CRA-Delaware, which continued to exist under different ownership. The Legacy Shareholders then filed a lawsuit (hereinafter the "underlying lawsuit") against Plaintiffs in Virginia state court, alleging breach of fiduciary duty in connection with the August 2005 merger. The parties eventually settled the underlying lawsuit for $ 3 million.[3]

Plaintiffs, as former directors of CRA-Delaware, filed a claim with Carolina, alleging a loss under the policy as a result of the underlying lawsuit. Carolina denied their claim on the basis of the "insured vs. insured" exclusion. According to Carolina, because the Legacy Shareholders were former directors and/or officers of CRA-Delaware, lawsuits brought by them are explicitly excluded under the policy.[4] In this action, Plaintiffs challenge Carolina's denial of coverage.

---

[3] Sterling's insurance provider, Federal Insurance Company, or "Chubb," paid $ 1.5 million of the settlement and approximately 75% of the defense costs. Sterling paid the remainder of the settlement and attorney's fees.

[4] In its Motion for Summary Judgment [doc. # 98], Carolina also argues that it is not liable because Plaintiffs did not suffer a "Loss" as defined by the insurance policy and also because the other insurance clause in the policy applies due to the fact that the underlying lawsuit was also

## II.

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party. *See Anderson*, 477 U.S. at 255; *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008). If the moving party carries its burden, the party opposing summary judgment "may not rely merely on allegations or denials." Fed. R. Civ. P. 56(e)(2). Rather, the opposing party must "set out specific facts showing a genuine issue for trial." *Id*. In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative,

---

covered under the Chubb policy. The Court does not reach these issues because it finds that the "insured vs. insured" exclusion applies to the underlying lawsuit.

summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.

The Parties agree that Virginia law governs. In Virginia, as in most states, where an insurance contract "is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the [contract] itself," *Va. Elec. & Power Co. v. N. Va. Reg'l Park Auth.*, 270 Va. 309, 316 (2005). However, "[i]f exclusionary provisions are ambiguous, such that they may be understood in more than one way, [the court must] interpret the policy in a manner that provides coverage." *Lower Chesapeake Assoc. v. Valley Forge Ins. Co.*, 260 Va. 77, 88 (2000); *see also Allstate Ins. Co. v. Gauthier*, 273 Va. 416, 420 (2007). In all cases, moreover, "the construction adopted should be reasonable, and absurd results are to be avoided." *Government Employees Ins. Co. v. Moore*, 266 Va. 155, 167 (2003).

After looking closely at the "insured vs. insured" exclusion, the Court concludes that it unambiguously excludes losses arising from lawsuits brought by former directors or officers, including the Legacy Shareholders. The exclusion could not be more clear. It states that Carolina is not liable "to make any payment for Loss in connection with a Claim made . . . by any Directors or Officers." And the term "Directors or Officers" is defined to include former directors or officers. Thus, on it face, the language of the Carolina policy excludes the claims asserted in the underlying lawsuit because they were made by former officers and directors of CRA-Delaware.[5]

Plaintiffs contend that the Court should read the policy to include a capacity requirement. That is, Plaintiffs would like the exclusion to preclude coverage *only* when a former officer or

---

[5] Because each Plaintiff was an officer and/or director of CRA-Delaware, the Court need not, and does not, decide whether their service as a director or officer of CRA-Illinois is relevant to the "insured vs. insured" exclusion in the Carolina policy.

director sues in his capacity as a director or officer. As an initial matter, the Court confesses that it is hard pressed to think of a case in which a former director or officer would be suing in his capacity as a director or officer, and at argument Plaintiffs' counsel was unable to conjure up a convincing example. Surely, in most cases involving former directors or officers, they would be suing in some other capacity, such as shareholders (which, of course, is what occurred here) or as a former employee (which they are permitted to do under the terms of the exclusion).[6] In any event, the plain language of the exclusion belies Plaintiffs' capacity argument. For there is simply no language in the policy suggesting that this exclusion is limited to lawsuits by former officers and directors in their capacity as such.

In fact, reading a capacity requirement into the exclusion would render superfluous some of the exceptions to the "insured vs. insured" exclusion. For instance, the exclusion expressly does not apply to "any derivative action by any security holder of the Insured Entity, but only if such Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of any Insured or the Insured Entity." Aff. of William Macey Re: Mot. for Summ. J. [doc. # 62], Ex. B at § IV.F.1. However, if the "insured vs. insured" exclusion contained a capacity requirement, then it would not apply to any derivative action because all such actions are brought by individuals in their capacity as shareholders, not as directors or officers. Thus, if the exclusion contained a capacity requirement, the derivative exception would serve no purpose. Yet, courts ordinarily should not read language in contracts or insurance policies to be superfluous. *See Richfood, Inc. v. Jennings*, 255 Va. 588, 593 (1998) ("No word or clause [in

---

[6] Under the insurance policy, the "insured vs. insured" exclusion does not apply for "any Claim for a Wrongful Employment Act." Aff. of William Macey Re: Mot. for Summ. J. [doc. # 62], Ex. B at § IV.F.2.

a contract] will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words aimlessly.").

Furthermore, many of the other provisions of the Carolina policy do contain explicit capacity requirements, suggesting that if Carolina had intended to include a capacity requirement in the "insured vs. insured" exclusion, it would have done so. For instance, the definition of "Wrongful Act" is defined as an act "by the Directors or Officers of an Insured Entity in their respective capacities as such." *Id.* at III.P.1. Other exclusions also contain explicit capacity requirements. *See, e.g.*, *id.* at IV.H (precluding any claim "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any Wrongful Act or Wrongful Employment Act of the Directors or Officers *serving in their capacities as directors, officers, trustees or governors* of any other entity other than the Insured Entity" (emphasis added)). This makes the absence of an explicit capacity requirement in the "insured vs. insured" exclusion all the more glaring.

Plaintiffs seem to concede that, read literally, the exclusion would apply to the lawsuit filed by the Legacy Shareholders. However, they make several arguments as to why the Court should still construe the contract as providing coverage. First, they contend that even if the insurance policy is unambiguous, the Court should be able to look at extrinsic evidence – in particular, evidence of the purpose of the "insured vs. insured" exclusion – to determine how the exclusion should be construed. According to Plaintiffs, the purpose of the "insured vs. insured" exclusion is to prevent collusive lawsuits. *See, e.g.*, *Township of Center v. First Mercury Syndicate, Inc.*, 117 F.3d 115, 119 (3d Cir. 1997) ("The primary focus of the exclusion is to prevent collusive suits in which an insured company might seek to force its insurer to pay for the poor business decisions of its officers or managers."). In this regard, Plaintiffs point to the testimony of the underwriter of this policy, Timothy Marks, who

testified at his deposition that he understood the purpose of the "insured vs. insured" exclusion was to prevent lawsuits where directors sue the company in order to get a payout from the insurance company. *See* Aff. of Judd Bernstein Re: Mot. for Summ. J. [doc. # 61], Ex. A at 28 ("My understanding is that we don't want the insureds suing themselves so that they can go ahead and look at the policy as a free lottery ticket, if you will, and sue themselves for the whole amount, take the whole amount."). Because the underlying lawsuit was not collusive, Plaintiffs argue, the "insured vs. insured" exclusion should not be applied to deny coverage in this case.

This argument misunderstands Virginia law. It is well established that "[w]here language [of a contract] is unambiguous, it is inappropriate to resort to extrinsic evidence." *Va. Elec. & Power Co.,* 270 Va. at 316. Plaintiffs point to some language in *Va. Elec. & Power Co.* that they claim supports their argument that the Court should look at the purpose of the exclusion in order to ascertain its meaning. In that case, the Supreme Court of Virginia stated that "[t]he facts and circumstances surrounding the parties when they made the contract, and the purposes for which it was made, may be taken into consideration as an aid to the interpretation of the words used, but not to put a construction on the words the parties have used which they do not properly bear." *Id.* at 319. Whatever this language may suggest in isolation, however, it is clear in context that resorting to extrinsic evidence is appropriate only where there is ambiguity in the insurance contract, and there is no ambiguity here. Moreover, even the above-quoted language from *Va. Elec. & Power Co.* makes clear that a court cannot construe a contract in a manner that gives the words a meaning they do not "properly bear." Yet, that is precisely what Plaintiffs are asking the Court to do. The bottom line is that because there is no ambiguity in the contract, the Court cannot use the alleged purpose

of the "insured vs. insured" exclusion to create ambiguity.[7]

Nor is the Court troubled by this result. As Judge Posner explained in *Level 3 Communications, Inc. v. Federal Ins. Co.*, 168 F.3d 956, 958 (7th Cir. 1999), it important not to confuse "a rule with its rationale." In that case, the plaintiff urged the court to "read the 'Insured versus Insured' exclusion in light of its purpose, which is to exclude coverage . . . of collusive suits." *Id*. The Court refused to look behind the rule to its purpose, explaining that

> There is a trade-off between clarity and ease of application, on the one hand, and a tight fit between a legal or contractual norm and its purpose, on the other. A simple, flat rule is deliciously clear and easy to apply, but it may be both underinclusive and overinclusive in relation to the purpose that animates it. A standard, like "no coverage for collusive suits or lovers' quarrels," is contoured exactly to its purpose, but it cannot be applied without a potentially costly, time-consuming, and uncertain inquiry into the nature of the underlying dispute sought to be covered.

*Id.* In other words, even assuming that the underlying lawsuit did not fall into any of the stated purposes of the exclusion, that would not be a reason for the Court to look beyond the plain, unambiguous language of the contract.[8]

Plaintiffs next argue that even if the Court is unconvinced by their arguments, they must only

---

[7] Plaintiffs would like the Court to find Mr. Mark's testimony determinative on the question of the exclusion's purpose. In their view, because Mr. Marks stated the purpose of the "insured vs. insured" exclusion was prevention of collusive lawsuits, the company cannot now claim to have had another purpose in mind. This argument fails for several reasons. First of all, as explained above, Plaintiffs cannot use the supposed purpose of the exclusion to create an ambiguity that does not exist in the language of the exclusion itself. Furthermore, Mr. Marks was not deposed pursuant to Rule 30(b)(6) of the *Federal Rules of Civil Procedure*, and therefore he was not Carolina's representative insofar as the purposes of the exclusion are concerned.

[8] In *Level 3 Communications Inc. v. Federal Ins. Co.*, the Judge Posner also lists "lovers' quarrels," or corporate infighting as an additional purpose of the "insured vs. insured" exclusion. Carolina points out this same purpose in its briefing on summary judgment. Although the Court does not make any findings as to the nature of the underlying suit, it is at least arguable that it could be described as a corporate infighting between the Legacy Shareholders and their successors.

show that their construction is reasonable, at which point the Court must construe the contract in their favor. Plaintiffs allege that their construction must be reasonable because other courts have construed similar "insured vs. insured" provisions in cases involving former directors or officers as containing an implicit capacity requirement. The Court rejects this argument for several reasons. For one, some of the cases that Plaintiffs cite involve "insured vs. insured" exclusions with explicit capacity requirements. For instance, Plaintiffs cite *Township of Center v. First Mercury Syndicate, Inc.*, 117 F.3d 115 (3d Cir. 1997). However, in that case the "insured vs. insured" exclusion employed the word "insured," which was defined elsewhere in the policy as "[a]ll persons acting within the scope of their official duties who were, now are or shall be lawfully elected or lawfully appointed officials and members of the 'Governmental Entity.'" *Id.* at 117. Thus, the exclusion in *First Mercury* had a capacity requirement written into it. As explained above, that is not the case here.

For another, the one case that Plaintiffs do cite with roughly analogous contractual language is not persuasive. Plaintiffs rely heavily on *Conklin v. Nat'l Union Fire Ins. Co.*, No. 4-86-860, 1987 U.S. Dist. LEXIS 12337 (D. Minn. Jan. 23, 1987), which read a capacity requirement into an "insured vs. insured" exclusion similar to the one at issue here. However, Plaintiffs ignore the numerous cases that have rejected *Conklin*'s reasoning. *See, e.g.*, *Home Federal Savings & Loan Assoc. of Niles v. Federal Ins. Co.*, No. 4:06-CV-3053, 2007 WL 2713060, at * 3 (N.D. Ohio 2007); *PowerSports, Inc. v. Royal & SunAlliance Ins.* Co., 307 F. Supp. 2d 1355, 1362 (S.D. Fla. 2004); *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 226 F. Supp. 2d 1326 (M.D. Fla. 2002); *Am. Medical Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 244 F.3d 715 (9th Cir. 2001). These courts largely rejected *Conklin* because it eschewed the well-established rule that an unambiguous contract

is to be read according to its plain meaning. *See, e.g.*, *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 412 F.3d 1224, 1229-30 (11th Cir. 2005) (rejecting *Conklin* because "in Florida the rule for interpreting insurance contracts is the plain meaning of its terms"). *Conklin* has even been rejected by other courts in the same jurisdiction. *See, e.g., Miller v. Ace USA*, 261 F. Supp. 2d 1130, 1139 (D. Minn. 2003) (criticizing *Conklin* and embracing the plain language of the insured vs. insured clause, rather than "divining the intent behind [the] clause") (citations omitted)). A construction of policy language does not become reasonable on the basis of one district court opinion from more than twenty years ago that has been rejected by every court to consider it. The Court agrees with the clear weight of authority, which rejects *Conklin*'s reasoning as unsound.

In fact, the only other court to interpret the identical language at issue here came to the same conclusion as this Court. In *Alanco Tech., Inc. v. Carolina Casualty Ins. Co.*, No. CV 04-0789, 2004 U.S. Dist. LEXIS 28266 (D. Ariz. Sept. 20, 2004), District Judge David Campbell stated that

> Defendant argues that the original lawsuit was brought by Richard Jones, an insured former director, and therefore falls squarely within the language of the insured versus insured exclusion. The Court agrees. The plain language of the policy excludes from coverage any claim brought "against any Insured" "by any of the Directors or Officers." Policy § IV.F. The policy defines Directors and Officer[s] to include "any past, present or future duly elected or appointed directors and officers of the Company." Policy § III.E. Plaintiffs concede that Jones is a past director of Alanco. Thus, by its plain terms, the exclusion applies to the original lawsuit filed by Jones against Alanco.

*Id.* at * 4. In that case, the plaintiffs also relied heavily on *Conklin*. In response, Judge Campbell stated that "*Conklin* does not persuade the Court to look beyond the plain language of Defendant's policy. *Conklin* represents a minority view that has been rejected even by subsequent cases in the same jurisdiction." *Id.* at * 6. Of course, another court's interpretation of the *exact policy* at issue is more persuasive than cases addressing different policies with different contractual language.

It is true, as Plaintiffs points out, that even when the language of a contract is unambiguous, the Court must still ensure that construing the contract according to its plain meaning does not give rise to absurd results. As Judge Posner explained, "when the application of a rule leads to a truly whacky result, a more than suspicion arises that the parties can't have set so high a value on clarity that they would have thought such an application a proper interpretation of the rule." *Level 3 Communications, Inc.*, 168 F.3d at 958; *see also Government Employees Ins. Co.*, 266 Va. at 167 (holding that Virginia courts must avoid absurd results); *Metropolitan Life Ins. Co. v. Myers*, 161 Va. 822, 831 (1933) (refusing to apply the literal meaning of an insurance contract when it would lead to absurd results in that case).

Plaintiffs contend that applying the literal meaning of the "insured vs. insured" exclusion to this case would produce such a "whacky result." They argue that if suits by the Legacy Shareholders are not covered, then the insurance policy is practically useless. This is so, they say, because the Legacy Shareholders were the only shareholders that could have brought a lawsuit for breach of fiduciary duty during the policy period. However, as Carolina points out, the policy covers many other kinds of claims besides breach of fiduciary duty claims, including tortious conduct liability, intellectual property liability, antitrust liability, liability under RICO, employment related liability, criminal liability, and ERISA liabilities. Even if the contract did cover only breach of fiduciary duty claims – and it does not – CRA-Delaware could have sold stock to new individuals at any time during the policy period and lawsuits brought against the company or its directors and officers by these individuals would then have been covered. In short, on this record, the Court does not believe that coverage under the Carolina policy was illusory.

Plaintiffs next dream up some hypothetical scenarios in which a literal reading of the

exclusion would produce absurd results. They imagine a scenario, for instance, where a lowly officer (say assistant secretary) leaves the company and starts a rival business. Thirty years later, he sues the company and its officers and directors for copyright infringement. Strict application of the "insured vs. insured" exclusion in this scenario may very well produce absurd results.[9] But the Court is not free to disregard the plain meaning of the policy in this case because it might produce absurd results in very different, hypothetical cases. Rather, the Court must determine whether the results are absurd in the case before it. If so, the Court is allowed to "carve a hard-edged exception, necessary to avoid absurdity." *Level 3 Communications, Inc.*, 168 F.3d at 959.

Here, there is no reason to carve out such an exception because the Court concludes that the result in this case is neither absurd nor "whacky." Unlike in Plaintiffs' scenario, the Legacy Shareholders had been directors and/or officers a mere four months before the insurance policy was purchased, not thirty years. Furthermore, everyone agrees that the underlying lawsuit is a least tangentially connected to the June 2004 merger, in which the Legacy Shareholders took part, albeit briefly. There are many factual disputes about what precise role the Legacy Shareholders had and about the nature and origin of the underlying suit. But even resolving all factual disputes in favor of Plaintiffs, as the Court must on summary judgment, it is not nonsensical to apply the exclusion to the claims asserted in the underlying lawsuit. It is undisputed that Messrs. Brown and Wood, as directors of CRA-Delaware, ratified the certificate of incorporation, adopted CRA-Delaware's by-laws, elected the officers of CRA-Delaware, authorized and directed the issuance of stock, adopted

---

[9] Although this hypothetical scenario may be absurd, Timothy Marks stated in his affidavit that CRA-Delaware could have purchased a limitation on the "insured vs. insured" exclusion so that only claims made by former directors who had served in that capacity during the last four years would be excluded. *See* Def.'s Mem. in Opp'n to Summ. J. [doc. # 69], Ex. A, ¶ 6.

the Purchase Agreement to sell their shares of stock to Sterling, and adopted the Management Agreement with Sterling. All of these acts, among others, form the basis of breach of fiduciary duty allegations asserted by the Legacy Shareholders in the underlying lawsuit.

Plaintiffs' final argument is that even if the "insured vs. insured" exclusion does not contain a capacity requirement, the Legacy Shareholders should not be considered "former directors or officers" because they served for what Plaintiffs characterize as a "nanosecond." This argument might carry some weight if the policy defined a "Director or Officer" as an individual who *served or acted* as a director or officer. However, the policy defines "Director or Officer" as any "duly elected or appointed" director or officer. Plaintiffs acknowledge that the Legacy Shareholders were duly elected or appointed directors and/or officers. Thus, it is immaterial whether, in fact, they *served* in that capacity.

Furthermore, as noted above, the Legacy Shareholders appear to have played quite a substantial role during the reorganization process. And as Carolina points out, and Plaintiffs acknowledge, if the Legacy Shareholders had been sued because of any of their actions as directors of CRA-Delaware during the reorganization, the Carolina insurance policy would have covered them, no matter how allegedly fleeting was their service as directors and officers. As a consequence, the Court finds unconvincing Plaintiffs' argument that the Legacy Shareholders should not be considered former directors or officers.

In sum, the Court concludes that the Legacy Shareholders were former directors and/or officers within the meaning of the Carolina policy and that suits by former directors and officers – regardless whether they sue as directors and/or officers or in some other capacity – fall squarely within the terms of the unambiguous "insured vs. insured" exclusion. Carolina, therefore, properly

denied coverage of Plaintiffs' claim.

## IV.

The Court **DENIES** Plaintiffs' Motion for Summary Judgment [doc. # 97] and **GRANTS** Carolina's Motion for Summary Judgment [doc. # 98]. **The Court is directed to enter judgment in favor of Carolina Casualty Insurance Company and to close this file.**

IT IS SO ORDERED.

/s/        Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: November 14, 2008.**