UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

M. WILLIAM MACEY, JR., CHARLES :
SANTORO, and HARRIET WEISS :
TERBELL, :
 :
      Plaintiffs, :
 :
v. :
 :
CAROLINA CASUALTY INSURANCE :
COMPANY, :
 :
      Defendant. :

OPINION AND ORDER

3:06cv1719 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

William Macey, Charles Santoro, and Harriet Weiss Terbell sue the Carolina Casualty Insurance Company ("Carolina"), claiming that Carolina improperly refused them coverage under its director and officer ("D & O") insurance policy. Carolina has filed a renewed motion for summary judgment. For the reasons that follow, Carolina's Renewed Motion for Summary Judgment [doc. # 133] is DENIED.

I.    FACTUAL BACKGROUND

The facts in this case have been discussed in two prior opinions and are not recounted in full detail here.[1] Suffice it to say the following. Prior to May 2004, Community Research Associates ("CRA") was incorporated in Illinois and controlled by a group of shareholders that the parties refer to as the "Legacy Shareholders." In May 2004, CRA underwent a corporate reorganization, reincorporating in Delaware and effectuating a share purchase agreement with Sterling Investment Partners ("Sterling") whereby Sterling became the majority shareholder, and

---

[1] A more detailed recitation of the facts of this case is found in *Macey v. Carolina Cas. Ins. Co.*, 674 F.3d 125, 131 (2d Cir. 2012).

the Legacy Shareholders became minority shareholders, in the newly reorganized CRA-Delaware. The share purchase agreement designated Macey and Santoro as CRA-Delaware directors, and Terbell later joined CRA-Delaware's board. After the share purchase agreement, Sterling was able to nominate individuals to the board of directors of CRA-Delaware.

In October 2004, CRA-Delaware purchased D & O insurance from Carolina. In relevant part, the Carolina Policy covered claims against CRA-Delaware directors for any "Wrongful Act," which was defined to include "any actual or alleged breach of duty."[2] Coverage was subject to a number of exclusions, however, including (1) an "insured vs. insured" exclusion by which Carolina would not be liable for claims brought by any of the insured directors against one another, and (2) an "other insurance" clause that stated that Carolina would "not be liable to make any payment for Loss in connection with a Claim made against any Insured . . . which is insured in whole or in part by another valid policy . . . ."[3] In June 2005, Sterling purchased coverage from Federal Insurance Company ("Chubb") for officers, directors, and managing members of Sterling Entities.[4] The Chubb Policy covered Macey and Santoro, but not Terbell.

In August 2005, Plaintiffs approved a separate merger whereby all of CRA-Delaware's stock was sold to a third party, CRA Acquisitions Corp. The Legacy Shareholders filed a lawsuit ("underlying lawsuit") alleging breach of fiduciary duty in connection with this merger. Plaintiffs and the Legacy Shareholders settled the underlying lawsuit for three million dollars. Chubb paid $ 1.5 million and most of the defense costs, and Sterling, a co-defendant in the

---

[2] Carolina Policy [doc. # 65-3] at 1, 4 (bold formatting omitted).

[3] *Id.* at 4–5.

[4] *See* Chubb Policy [doc. # 65-10] at 1, 15.

underlying lawsuit, paid the remainder. Plaintiffs filed a claim with Carolina, alleging an insured loss under its policy. Carolina denied the claim.

In 2006, Plaintiffs initiated the present suit against Carolina, challenging its denial of coverage. In 2008, the late Judge Mark R. Kravitz granted Carolina's motion for summary judgment, ruling that Carolina's denial of coverage was proper under the terms of its policy.[5] Judge Kravitz concluded that "the Legacy Shareholders were former directors and/or officers within the meaning of the Carolina policy and that suits by former directors and officers . . . fall squarely within the terms of the unambiguous 'insured vs. insured' exclusion."[6] Because this determination was sufficient to grant Carolina's motion, Judge Kravitz did not rule on two additional arguments raised by Carolina in support of summary judgment: (1) that the "other insurance" clause in the Carolina Policy precludes liability because the underlying lawsuit was covered by the Chubb Policy; and (2) that Plaintiffs did not suffer a "loss" as defined by the Carolina Policy.[7] On appeal, the Second Circuit vacated the judgment, concluding that the Carolina Policy is "ambiguous with respect to whether suits by certain Legacy Shareholders in this case are excluded from coverage by the 'insured vs. insured' provision."[8] The Second Circuit declined to consider Carolina's two additional grounds for summary judgment.[9] On

---

[5] *See Macey v. Carolina Cas. Ins. Co.*, 585 F. Supp. 2d 277 (D. Conn. 2008).

[6] *Id.* at 286.

[7] *Id.* at 279 n.4.

[8] *Macey*, 674 F.3d at 131.

[9] *Id.* (quoting *Colavito v. New York Organ Donor Network, Inc.*, 486 F.3d 78, 80 (2d Cir. 2007)).

remand, Carolina renews its motion for summary judgment, asking the Court to rule on the two remaining arguments presented in its Motion for Summary Judgment [doc. # 98].

## II.     LEGAL STANDARD

Summary judgment is appropriate only when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of this motion only), admissions, interrogatory answers, or other materials" submitted to the Court "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[10] Summary judgment must be denied "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[11] However, the party against whom summary judgment is sought cannot prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts," and instead "must come forward with specific facts showing that there is *genuine issue* for trial."[12]

## III.    DISCUSSION

### A.      "Other Insurance" Clause

Carolina argues that the "other insurance" exclusion in its policy precludes recovery.[13] Carolina observes that Chubb provided Plaintiffs with coverage for up to five million dollars, indemnified and defended Plaintiffs in the underlying lawsuit, and ultimately paid $1.5 million

---

[10] Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Civ. P. 56(a).

[11] *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted).

[12] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986) (quotation marks and citations omitted).

[13] *See* Carolina Policy [doc. # 65-3] at 4–5 ("The insurer shall not be liable to make any payment for Loss in connection with a Claim made against any Insured . . . which is insured in whole or in part by another valid policy . . . .").

of the settlement. Carolina contends that the plain language of its "other insurance" exclusion bars recovery, because Plaintiffs' claim was "insured in whole or in part" by Chubb and because there was no "excess beyond the amount . . . of coverage under such policy."[14] With the benefit of greater context, however, the "other insurance" clause in the Carolina Policy does not operate in the manner that Carolina contends that it does.

### 1.  Different Risks

Plaintiffs challenge the operability of the Carolina "other insurance" clause, arguing first that "other insurance" provisions only go into effect when another policy covers the identical risk for identical parties. The Chubb Policy covered officers, directors, and managing members of Sterling Entities, while the Carolina Policy insured directors and officers of CRA-Delaware.[15] While both policies insure Macey and Santoro for claims arising from their "Wrongful Acts"—similarly defined in both policies[16]—Plaintiffs contend that the policies cover different risks, because the "risks associated with serving as an officer or director of CRA are not co-extensive with those of being a managing member in one or all of the Sterling Entities."[17]

---

[14] *Id.*

[15] *See* Chubb Policy [doc. # 65-10] at 1, 15; Carolina Policy [doc. # 65-3] at 1, 4.

[16] *Compare* Chubb Policy [doc. # 65-10] at 1, 18 (defining "wrongful act" as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty. . . committed, attempted, or allegedly committed or attempted . . . by an insured person"), *with* Carolina Policy [doc. # 65-3] at 1, 4 (defining "wrongful act" as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Directors or Officers of an Insured Entity in their respective capacities as such").

[17] Plaintiffs' Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp.") [doc. # 78] at 25–26.

"It is generally held that in order for an ['other insurance'] clause to operate in the insurer's favor, there must be both an identity of the insured interest and an identity of risk."[18] Terbell was not insured under the Chubb Policy, as she was not an officer, director, or managing member of any of the Sterling Entities.[19] Terbell was therefore not subject to the "other insurance" clause, because her share of the settlement costs of the underlying lawsuit were not "insured in whole or in part by another valid policy."[20] At a minimum, summary judgment is inappropriate as to Terbell.

It is more difficult to determine whether the identity-of-risk requirement bars the operation of the "other insurance" clause against Santoro and Macey, because, based on the record, I cannot ascertain which of Chubb's insuring clauses is the source of Santoro and Macey's coverage. If Santoro and Macey received coverage by virtue of Insuring Clause 4, which affords outside directorship liability coverage, then the covered risks appear identical: both Chubb and Carolina insured Santoro and Macey in their capacity as directors or officers *for CRA-Delaware*.[21] However, because I conclude below that Carolina's "other insurance" clause

---

[18] 15 Couch on Insurance 3d, § 219.14. *Accord National Union Fire Ins. Co. v. St. Paul Fire and Marine Ins. Co.*, 447 F.2d 75, 77 (9th Cir. 1971) ("[I]t is first necessary to show that both policies cover the same risk . . . . Then the 'other insurance' clauses of each policy come into play and the game of policy semantics begins."); *State v. Janicki*, 188 W.Va. 100 (1992) ("[E]xcess and other insurance clauses are applicable only where there is overlapping or double insurance and this occurs only where two or more policies insure the same party upon the same subject matter and assume the same risks." (quoting 8 Appleman, Insurance Law and Practice, § 4911 (1962)).

[19] *See* Declaration of Harriet Weiss Terbell [doc. # 73] ¶¶ 1–2.

[20] Carolina Policy [doc. # 65-3] at 4–5 (Clause IV.G).

[21] *See* Chubb Policy [doc. # 65-10] at 1.

must be disregarded under Virginia law as irreconcilable with Chubb's "other insurance" clause, I need not resolve this question.

### 2. Mutually Repugnant "Other Insurance" Clauses

Noting that the Chubb Policy also contains an "other insurance" excess clause, Plaintiffs also argue that if two policies both have "other insurance" clauses, they are mutually repugnant and should be disregarded.[22] The parties agree that Virginia law governs. While this Court is unaware of a Virginia decision that squarely addresses this issue, the Virginia Supreme Court has offered some guidance on how a court should analyze purportedly conflicting "other insurance" exclusions in insurance policies that would otherwise cover a loss.

In *State Capital Insurance v. Mutual Assurance Society*,[23] three policies provided liability coverage to an individual operating a motor boat that struck a swimmer. All three policies contained "excess insurance" clauses. "Although varying slightly in wording, all the clauses had the same effect, *viz.*, to provide that the liability coverage afforded by the particular policy would

---

[22] The Fourth Circuit has provided a helpful primer on the basic types of "other insurance" clauses: "An 'other insurance' clause applies when two or more insurance policies cover the same risk for the benefit of the same person. . . . There are three basic types of 'other insurance' clauses: pro rata, excess, and escape. . . . A pro rata clause typically provides that, in the event other insurance covers the same loss, the insurer will pay its pro rata share of the loss, generally determined by the ratio of the limit of its policy to the sum of the limits of all the policies covering the same claim. . . . An excess clause generally provides that when there is other primary coverage, the insurer's liability is limited to the amount by which the loss exceeds the coverage provided by the other primary insurance, up to the limit of the excess policy. . . . An escape clause generally provides that, in the event other insurance covers the loss, the insurer is not liable for any loss." *Medical Protective Co. v. National Union Fire Ins.*, 25 Fed. App'x 145, 146 n.1 (4th Cir. 2002). *See generally* Douglas R. Richmond & Darren S. Black, *Expanding Liability Coverage: Insured Contracts and Additional Insureds*, 44 Drake L. Rev. 781, 820–31 (1996) (discussing differing treatment of dueling "other insurance" clauses).

[23] 241 S.E.2d 759 (Va. 1978).

not apply to the extent other valid and collectible insurance was available to the insured."[24] After disposing of a statutory argument that one insurer's excess insurance clause was invalid under state law, the court reached the question of how, if at all, to reconcile the two excess insurance clauses involved in the appeal:

> The two clauses are of identical effect in providing that the watercraft coverage shall not apply to the extent other valid and collectible insurance is available to the insured. Given full force and effect, the two clauses operate mutually to reduce or eliminate the amount of valid and otherwise collectible insurance available to the insured from both policies. The two excess insurance clauses, therefore, are in irreconcilable conflict with one another. In this situation, both must be disregarded, with the result that neither policy provides primary coverage for the loss in question.[25]

In *GEICO v. Universal Underwriters Insurance*, however, the Virginia Supreme Court concluded that competing "other insurance" clauses are not always mutually repugnant and can sometimes be reconciled.[26] In *GEICO*, two car insurance policies provided uninsured-motorist coverage and contained "other insurance" clauses. The GEICO policy furnished only "excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance,"[27] while the Universal Insurance policy provided that

> [i]f there is other valid and collectible Insurance whether primary, excess or contingent, available to the GARAGE CUSTOMER and the limits of such insurance are sufficient to pay damages . . . up to the amount of the APPLICABLE FINANCIAL RESPONSIBILITY LIMIT [and if] the limits of

---

[24] *Id.* at 760.

[25] *Id. Accord Reliance Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, 753 F.2d 1288, 1290 (4th Cir. 1985) ("When two insurance policies cover the same risk and each contains an excess clause, the clauses are considered mutually repugnant and are disregarded. Once disregarded, the general coverage of each policy applies and the insurers are obligated to share the loss.").

[26] 350 S.E.2d 612 (Va. 1986).

[27] *Id.* at 613.

such insurance are insufficient . . . this insurance shall apply to the excess of damages . . . up to such limit."[28]

After reaffirming the principle that the insured "is entitled to primary protection under one or the other," the *GEICO* court indicated that rather than categorically disregarding dueling "other insurance" clauses, courts "must construe the terms of the contracts to determine which" policy provided primary coverage.[29]  This inquiry involved two questions: "(1) Does the existence of the GEICO policy trigger the escape clause in Universal's policy? (2) Does the existence of the Universal policy trigger the escape clause in GEICO's policy?"[30]  Analyzing the parties' intent as embodied in the contractual language, the court determined that the two clauses were not, in fact, mutually repugnant. The court found that the GEICO policy triggered the exclusion in the Universal policy, because the latter expressly excluded coverage whenever the individual was insured by other insurance "whether primary, *excess*, or contingent."[31]  However, the court further determined that the existence of the Universal policy did *not* trigger the exclusion in the GEICO policy, because the Universal policy—with its exclusion triggered—was not primary

---

[28] *Id.*

[29] *Id.* at 614.

[30] *Id.*

[31] *Id.* at 615 (emphasis added).


insurance.[32] In short, a fine-grained analysis of the parties' intent with each clause revealed that the clauses were not mutually repugnant.[33]

Based on *State Capital Insurance* and *GEICO*,[34] I must carefully consider the precise wording of both "other insurance" clauses before me. Two questions must be answered: (1) whether the existence of the Chubb Policy triggers the "other insurance" clause in the Carolina Policy; and (2) whether the existence of the Carolina Policy triggers the "other insurance" clause in the Chubb Policy.[35] If both clauses operate to preclude the insurers' liability, then they present

---

[32] *See id.* at 613 (noting that GEICO policy provided only "excess insurance over any other similar insurance available to such insured *and applicable to such vehicle as primary insurance*" (emphasis added)).

[33] *See Allstate Ins. Co. v. Shelby Mut. Ins. Co.*, 152 S.E.2d 436, 439, 443 (N.C. 1967) (crediting language differences between the "other insurance" escape clauses to hold that the clauses were not mutually repugnant).

[34] As the parties note, the Virginia cases do not deal precisely with the type of "other insurance" clauses at issue here. *See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. Mem.") [doc. # 65] at 24 n.12; Pl. Opp. [doc. # 78] at 29. However, neither party has offered a convincing reason why the framework articulated by the Virginia Supreme Court does not apply more broadly whenever "other insurance" clauses are purportedly in conflict.

[35] *See GEICO*, 350 S.E.2d at 614; *see also Medical Protective Co.*, 25 Fed. App'x at 146 ("In light of *GEICO*, we conclude that the Virginia Supreme Court would adopt the majority rule of reconciling competing 'other insurance' clauses when it is possible to do so.").

an "irreconcilable conflict" and "must be disregarded."[36]  However, if the "other insurance" exclusion clauses can be reconciled, they must be given effect.[37]

The Chubb Policy unequivocally triggers the "other insurance" exclusion in the Carolina Policy.  Carolina's exclusion clause precludes liability for "Loss . . . which is insured in whole or in part by another valid policy, except with respect to any excess beyond the amount or amounts of coverage under such policy *whether such other policy is stated to be primary, contributory, excess, contingent, or otherwise*."[38]  While the wording of Chubb's "other insurance" clause varies depending on which "Insuring Clause" activated coverage under the policy, both versions of the "other insurance" clause provide that Chubb will offer some form of *excess* insurance, falling within the ambit of the language of the Carolina "other insurance" exclusion.[39]

Similarly, the Carolina Policy triggers the Chubb "other insurance" provision. As noted earlier, there are two distinct "other insurance" clauses in the Chubb contract.  If Chubb coverage is provided through Insuring Clause 1, 2, and 3—management liability, management indemnification, and professional liability coverage, respectively—then

---

[36] *State Capital Ins.*, 241 S.E.2d at 760. *Accord Aetna Cas. & Surety Co. v. National Union Fire Ins. Co.*, 233 Va. 49, 54 (1987) ("We have recently held that when 'other insurance' clauses of two policies are of identical effect in that they operate mutually to reduce or eliminate the amount of collectible insurance available, neither provides primary coverage . . . ." (citing *State Capital Insurance*, 241 S.E.2d 759)); *Allstate*, 152 S.E.2d at 442 (noting that "it was clearly not the intent of the parties to [Policy One], or of the parties to the [Policy Two], that [the insured] would be an uninsured motorist while driving the automobile in question").

[37] *See GEICO*, 350 S.E.2d at 613; *see also Aetna Cas. & Surety Co.*, 233 Va. at 54 (citing for comparison *GEICO* and parenthetically characterizing the case as holding that "'other insurance' clauses [were] reconcilable").

[38] Carolina Policy [doc. # 65-3] at 4–5 (Clause IV.G) (emphasis added); *see also GEICO*, 350 S.E.2d at 615 (giving significant weight to the language in one policy that there would be no liability if there were another insurer "whether primary, excess, or contingent").

[39] *See* Chubb Policy [doc. # 65-10] ¶ 18.

> if any Loss under this Policy is insured under any other valid and collectible insurance policy(ies), then this Policy shall cover such Loss . . . only to the extent that the amount of such Loss is in excess of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this Policy.[40]

If coverage is provided by Insuring Clause 4—outside directorship liability coverage—then

> this Policy shall be specifically excess of any indemnity (other than the indemnity provided by the Organization) and insurance available to such Insured Person by reason of serving in an Outside Capacity, including any indemnity or insurance available from or provided by the Outside Entity.[41]

Based on the current state of the record, I cannot determine which insuring clause activated Chubb's coverage. However, both versions of the "other insurance" clause are triggered by the Carolina Policy. The first of the clauses uses the same type of broad catch-all language that the *GEICO* court credited, and there is no doubt that the Carolina policy constituted a "valid and collectible insurance policy . . . [whether it] be primary, contributory, excess contingent or otherwise."[42] The Carolina Policy also triggers Chubb's second "other insurance" clause. Although this clause does not include the same catch-all language as the first clause, it has the same effect because it states that the Chubb Policy will be "*specifically excess of any . . . insurance*" available.[43] Thus, under either clause, the situation here is analogous to that in *State Capital Insurance*—namely that the two "other insurance" exclusions are "of identical effect"

---

[40] *Id.* ¶¶ 1–3, 18.

[41] *Id.* ¶¶ 4, 18.

[42] *Id.* ¶ 18.

[43] *Id.* (emphasis added).

and therefore must be disregarded.[44] As a result, Carolina's "other insurance" clause does not provide a basis for summary judgment.

### B. Defendant's Remaining Arguments

In the underlying lawsuit, Plaintiffs settled for three million dollars. Chubb covered $ 1.5 million of the settlement and a portion of Plaintiffs' legal expenses. Sterling—a co-defendant in the underlying lawsuit—paid the remainder. Plaintiffs have not paid, nor will they pay, any defense costs or settlement. Pointing to this arrangement, Carolina makes three related arguments as to why it is not liable under its policy: (1) having paid nothing out of pocket, Plaintiffs have not suffered any "Loss" within the meaning of the Carolina Policy; (2) recovery is equitably barred because it would represent a windfall or double recovery; and (3) recovery is barred because Plaintiffs have entered into a champertous contract with Sterling, whereby any proceeds from the pending lawsuit will be given to Sterling.[45]

#### 1. "Loss"

The Carolina Policy defines "Loss" to include defense expenses, settlements and judgments.[46] Carolina argues that because Plaintiffs have not paid anything out of pocket, they have not incurred a loss sufficient to trigger liability under its policy.[47] In interpreting the

---

[44] *Id.*

[45] *See* Def. Mem. at 26–30.

[46] Carolina Policy [doc. # 65-3] at 1 ("This Policy shall pay the Loss of . . . each and every Director or Officer of the Insured Entity arising from any Claim . . . for any Wrongful Act . . . ."); *id.* at 3 ("'Loss' means damages, judgments, settlements, pre-judgment interest and post-judgment interest and Costs of Defense . . .").

[47] *See* Def. Mem. at 27 (citing *Pan Pac. Retail Props., Inc. v. Gulf Ins. Co.*, No. Civ. 03-CV-679, 2004 WL 2958479 (S.D. Cal. July 14, 2004), *aff'd in part and rev'd in part*, 471 F.3d 961 (9th Cir. 2006)).

insurance contract, Carolina contends that "the definition of 'Loss' cannot be read to ignore the word 'Loss' itself, since doing so would completely eviscerate the meaning of the word."[48] In arguing that there is no contractual loss, Carolina relies heavily on the district court opinion in *Pan Pacific Retail Properties v. Gulf Insurance Company*. There, Pan Pacific Retail Properties and Western Properties Trust ("Western") sued their respective insurers, Gulf Insurance Company and Twin City Fire Insurance Company ("Twin City"), for failing to indemnify them for the costs associated with settling a class action lawsuit related to the merger of their two companies. Twin City declined to defend or indemnify Western, asserting that Western suffered no "loss" because Pan Pacific—not Western—paid the defense and settlement costs associated with the underlying lawsuit. The district court agreed, concluding that because Western "did not pay any of the [underlying] settlement . . . , no covered 'loss' accrued with respect to Western."[49]

Carolina's reliance on *Pan Pacific* is misplaced. On appeal, the Ninth Circuit disagreed with the district court's determination that, because Western itself paid nothing, there was no "loss" pursuant to the Twin City policy.[50] The Ninth Circuit carefully distinguished between insurance policies for liability and for indemnity: "In a liability contract, the insurer agrees to cover *liability* for damages. If the insured is liable, the insurance company must pay the damages. In an indemnity contract, by contrast, the insurer agrees to reimburse expenses to the insured that the insure[d] is liable to pay and has paid."[51] Western sought payment under two

---

[48] *Id.* at 26 (quoting *CNL Hotels & Resorts, Inc. v. Houston Cas. Co.*, 505 F. Supp. 2d 1317, 1322 (M.D. Fla. 2007)).

[49] *Pan Pac. Retail Props.*, 2004 WL 2958479, at *10.

[50] *See* 471 F.3d at 973.

[51] *Id.* at 972 (emphasis in original).

different types of coverage offered by the Twin City policy. Pursuant to "Insuring Agreement B(1)," Twin City agreed to "pay on behalf of the Company Loss for . . . which the Company has . . . indemnified the Directors and Officers."[52] Insuring Agreement B(1), the Ninth Circuit concluded, was an *indemnity* policy; by its plain terms, Twin City was liable only when Western had, in fact, indemnified its directors and officers.[53] As Western had not paid anything to its officers and directors, Twin City was not liable under Insuring Agreement B(1). However, under "Insuring Agreement C"—the second type of coverage—Twin City agreed to "pay on behalf of the Company Loss . . . which the Company shall become legally obligated to pay as a result of a Securities Claim."[54] The Ninth Circuit observed that

> Insuring Agreement C is a typical *liability* policy where the insurer must pay damages or expenses if the insured is legally liable as a result of a covered claim. . . . . Western was legally liable to pay any expenses or damages incurred by Western as a result of the [underlying lawsuit], regardless of whether Pan Pacific had honored its indemnification agreement. To the extent that Western is seeking coverage under Insuring Agreement C, it has suffered a Loss and may be entitled to indemnification by Twin City.[55]

The lesson from *Pan Pacific*, then, is not that the insured must always incur out-of-pocket expenses to trigger coverage for a "loss." The principle is that a court must look to the actual language of the insurance contract—being mindful of the difference between policies for indemnity and for liability—to determine whether the insurance policy in question requires that the insured have incurred actual expenses, or whether the insured's legal liability by itself triggers coverage.

---

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.* at 973 (emphasis added and citation omitted).

The Carolina Policy, like the Twin City policy in *Pan Pacific*, provides liability coverage for the directors and officers of CRA-Delaware and indemnity coverage to CRA-Delaware. "Coverage A" in the Carolina Policy provides that it "shall pay the Loss of":

> 1. each and every Director or Officer of the Insured Entity arising from any Claim first made against the Directors or Officers during the Policy Period or the Extended Reporting Period (if applicable) for any Wrongful Act, except and to the extent that the Insured Entity has indemnified the Directors or Officers.
>
> 2. the Insured Entity arising from any Claim first made against the Directors or Officers during the Policy Period or the Extended Reporting Period (if applicable) for any Wrongful Act, but only to the extent that the Insured Entity has indemnified the Directors or Officers for such Loss as permitted by law.[56]

Loss is defined to mean "damages, judgments, *settlements*, . . . and Costs of Defense."[57] Notwithstanding the fact that the Carolina Policy expressly excludes eight items from the contractual definition of "Loss,"[58] nowhere does it indicate that the "damages, judgments, settlements" must have been initially paid by the insured.[59] Weighing against Carolina's argument that "loss" should be interpreted according to its natural meaning is the fact that the term is contractually defined and that this definition expressly excludes various items from counting as "loss."[60] The maxim *expressio unius est exclusio alterius* cautions a court against grafting an additional exception onto an enumerated list of express exceptions.[61] Accordingly, I

---

[56] Carolina Policy [doc. # 65-3] at 1 (bold highlighting omitted).

[57] *Id.* at 3 (emphasis added and bold formatting omitted).

[58] *See id.*

[59] *See id.*

[60] *See id.* (excluding, *inter alia*, taxes, payment of insurance, commissions).

[61] *See Black's Law Dictionary* 620 (8th ed. 2004) ("A canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alterative."); *Greene*

find that Carolina was liable directly to Plaintiffs under the first clause in "Coverage A," because this insuring clause was triggered not by indemnification in fact, but by the "Loss" which the Carolina Policy defined to include settlements and defense costs without specifying any additional requirement that the directors and officers must have themselves paid some portion of these costs.

### 2.     Double Recovery

Carolina next argues that any recovery in this lawsuit should be barred as a windfall or double recovery, because Plaintiffs have already recovered in full with Chubb and Sterling having paid the entirety of Plaintiffs' defense and settlement obligations in the underlying lawsuit.[62]  As Carolina acknowledges, however, Plaintiffs have an agreement with Sterling to assign to it the proceeds of this lawsuit.[63]  If this agreement is valid,[64] then there will be no double recovery or windfall. Carolina's double-recovery claim thus depends on the invalidity of Plaintiffs' agreement with Sterling to assign the proceeds of this lawsuit, and, as such, turns on the merits of Carolina's third argument: that the Plaintiffs-Sterling agreement is champertous and thus invalid under Virginia law.

---

*v. United States*, 79 F.3d 1348, 1355 (2d Cir. 1996); *Scott v. City of New York*, 592 F. Supp. 2d 501 (S.D.N.Y. 2008).

[62] *See* Def. Mem. at 29–30.

[63] *See id.* at 30.

[64] *See infra* Part III.C.3

### 3. Champerty

Sterling and Plaintiffs entered into agreements whereby Sterling funded the present suit and Plaintiffs assigned any proceeds from the suit to Sterling.[65] Because Sterling was not insured under the Carolina Policy and is not a Plaintiff here, Carolina argues that this contract constitutes champerty.[66] According to Carolina, Virginia law defines a champertous agreement as one by which a person without interest in another's lawsuit undertakes to fund the suit at her own expense and, in exchange, receives all or part of the proceeds from the suit.[67] However, as Plaintiffs point out, Carolina relies on cases decided before Virginia passed a statute specifically authorizing assignment of the proceeds to a lawsuit. Section 8.01-26 of the Annotated Code of Virginia states:

> Only those causes of action for damage to real or personal property, whether such damage be direct or indirect, and causes of action ex contractu are assignable. The provisions of this section shall not prohibit any injured party or his estate from making a voluntary assignment of the proceeds or anticipated proceeds of any court award or settlement as security for new value given in consideration of such voluntary assignment.[68]

Whatever the common law rule regarding champerty may have been, § 8.01-26 plainly authorizes the type of agreement entered into by Sterling and the Plaintiffs. Plaintiffs' cause of action arises from contract—the Carolina Policy—and "causes of action ex contractu are

---

[65] *See* Defendant's Local Rule 56(a)(1) Statement [doc. # 60] ¶ 58; Deposition of William Macey, Ex. 8 to Def. Mem. [doc. # 65-11] at 113.

[66] *See* Def. Mem. at 30–31.

[67] *See id.* at 30 (citing *NAACP v. Committee on Offenses Against the Admin. of Justice*, 199 Va. 665, 673 n.2 (1958)).

[68] Va. Code Ann. § 8.01-26.

assignable."[69] Insofar as Carolina further argues that Plaintiffs' agreement with Sterling was invalid for want of consideration,[70] the record on summary judgment is not sufficiently developed to allow me to make this determination.

## IV.  CONCLUSION

Defendant's Renewed Motion for Summary Judgment [doc. # 133] is denied. In accordance with the Case Management Order [doc. # 43], the parties shall submit their Joint Trial Memorandum on or before **January 9, 2013**.

SO ORDERED:

/s/

Shira A. Scheindlin
United States District Judge

Dated:     New York, New York
           December 10, 2012

---

[69] *Id. Accord Payne v. Wyeth Pharm., Inc.*, No. 2:08cv119, 2008 WL 4890764, at *1 (E.D. Va. Nov. 12, 2008) ("Virginia law expressly provides that a party . . . may assign the proceeds or anticipated proceeds of any court award or settlement." (internal quotations omitted)).

[70] *See* Plaintiff's Reply [doc. # 81] at 10.

- Appearances –

**For Plaintiffs:**

Judd Burstein, Esq.
Judd Burstein, P.C.
1790 Broadway, Suite 1501
New York, NY 10019
212-974-2400

**For Defendant:**

Douglas M. Connors, Esq.
Brian Del Gatto, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker , LLP - Stmfd CT
1010 Washington Boulevard
Stamford, CT 06901
203-388-9100

Daniel E. Tranen, Esq.
David Holmes, Esq.
James K. Thurston, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker - IL
55 West Monroe St., Suite 3800
Chicago, IL 60603
312-704-0550